UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SOUTHERN ILLINOIS RIVERBOAT/CASINO CRUISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HNEDAK BOBO GROUP, INC., <br><br> Defendant. | Case No. 03-cv-4215-JPG |

### MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on a motion for partial summary judgment on the issue of liability for plaintiff's fire watch expenses (Doc. 60) filed by defendant Hnedak Bobo Group, Inc. (HBG). The plaintiff, Southern Illinois Riverboat/Casino Cruises, Inc. (Harrahs), has responded to HBG's motion (Doc. 72) and HBG has replied to the response (Doc. 74). HBG has moved to strike the affidavit of Rick W. Abell (Doc. 75), which Harrahs attached to its response to HBG's motion. Harrahs has responded to HBG's motion to strike (Doc. 78)

**I.      Standard on Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

## II.     Background

Harrahs and HBG entered into an agreement on June 29, 2000, under which HBG agreed to design the docking facility for a riverboat casino Harrahs planned to build on the Ohio River in Metropolis, Illinois. Harrahs wanted to replace the casino it was operating on the site because it was in very poor condition. The parties' contract (the Agreement) contained several provisions dealing with code compliance. Among other things, HBG agreed to assist Harrahs "in the filing of the required documents for the approval of governmental authorities having jurisdiction over the Project" and to revise "the drawings, if necessary for such approval." (Agrmt. at 7). The Agreement also provides that, "Prior to the commencement of construction, [HBG] shall provide documentation to [Harrahs] that, in the professional judgment of [HBG], all plans specifications and drawings conform to all applicable governmental regulations, statutes

and ordinances, and the improvements when built in accordance therewith will conform to applicable regulations." *Id*.

Pursuant to the Agreement, HBG designed a dock with four ramps providing access to the riverboat. HBG eventually determined, after employing an independent code consultant, that a cheaper, two-ramp design would satisfy the applicable codes and regulations. (Doc. 61 Ex. C & D). Upon review, Harrahs agreed to the two-ramp design. On March 23, 2000, HBG, HBG's code consultant, and Harrahs met with a representative of the State Fire Marshal to review the two-ramp plan. The Fire Marshal's representative orally confirmed that the two-ramp plan complied with applicable fire code. He declined, however, to provide written approval of the design because it was his policy to withhold such approval until he conducted an inspection of a completed facility.

In the spring of 2001, after construction of the dock had begun, another Fire Marshal's representative toured the construction site with James Nolan, the facilities manger for the project. This representative told Nolan the dock did not have sufficient ramps to comply with the fire code. Nolan told his superiors at Harrahs of the problem, but they did not relay this information to HBG.

HBG completed the dock in August 2001. On August 6, 2001, Harrahs moved the old boat to the new dock and continued operating the old boat there until the new boat arrived. The Fire Marshal inspected the old boat/new dock facility on August 24, 2001, and concluded that it failed to meet code because of ingress and egress problems.[1] The Fire Marshal refused to certify the structure and told Harrahs it had to maintain a fire watch if it intended to continue its

---

[1] HBG contends this determination did not have to do with the ramps.

operations. Harrahs chose to keep the facility open and to maintain the fire watch.

Once the new boat arrived on September 10, 2001 and its connection to the new dock was complete, the Fire Marshal inspected the set up and concluded that the facility needed additional ramps to comply with code. He concluded that the casino could not remain open unless Harrahs continued to maintain a fire watch. After an abortive appeal, Harrahs decided to build a third ramp. HBG claims Harrahs asked it and Thompson to submit plans for building the third ramp. HBG claims Harrahs chose to go with Thompson and fired HBG. Harrahs, on the other hand, contends that HBG continued to be involved with the third ramp until its completion.

Harrahs brings the instant action against HBG, alleging that it breached both express and implied warranties by submitting a plan for the dock that did not comply with applicable code.

**III.    Analysis**

HBG raises five, alternative grounds for granting it summary judgment on the issue of damages for fire watch expenses: (1) Harrahs cannot recover pursuant to the rule of *Hadley v. Baxendale*, 156 Eng. Rep. 145 (Ex. Ct. 1854); (2) Harrahs cannot recover for an illegal act; (3) Illinois' anti-indemnity statute prohibits recovery; (4) Harrahs cannot recover because it prohibited performance; and (5) Harrahs waived its right to insist on full code compliance.

**A.    *Hadley v. Baxendale***

Citing *Hadley*, HBG claims it cannot be liable for the fire watch damages because the parties never contemplated that Harrahs would "open early." (Doc. 61 at 8). It further contends that the Agreement specifically addressed how the parties would act if the casino failed to obtain the necessary permits: HBG was to redesign the dock and assist Harrahs in obtaining the proper permits. Harrahs, on the other hand, argues that the fire watches are common in the industry, making them at least foreseeable, if not within the contemplation of the parties. In support of

4

this proposition, Harrahs notes that the Office of the State Fire Marshal (OSFM) can require a fire watch when a particular building does not meet the applicable codes. HBG's code consultant, Jeff Boyle, testified at his deposition that he was aware that a fire watch is a possible course of action for a fire marshal to take in the face of code problems.

> The Supreme Court of Illinois has adopted the following rule from *Hadley*:
>
> Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.

*Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 67 (Ill. 1987) (quoting *Hadley*, 156 Eng. Rep. at 151). Given the testimony of Boyle and others, it certainly appears that fire watch damages were foreseeable. While it is true that HBG had an obligation under the Agreement to redesign the dock if it did not comply with the applicable codes, it does not necessarily follow that the Agreement prohibited Harrahs from mitigating any damages it might suffer as a result of noncompliance. Similarly, even if the parties did not contemplate the need for a fire watch, this does not necessarily mean it was not foreseeable. If it were foreseeable, then whether it was in the specific contemplation of the parties is not particularly relevant. *See Midland Hotel Corp.*, 515 N.E.2d at 67.

### B.  Illegal Acts

HBG cites several cases which hold that a plaintiff cannot base a cause of action on an illegal act. See *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155, 1174 (Ill. 2005) ("[C]ourts will not aid a plaintiff who bases his cause of action on an illegal act."); *Ransburg v. Haase*, 586 N.E.2d 1295, 1298 (Ill. App. Ct. 3d Dist. 1992) ("[A] person practicing a profession

without a license can not recover fees for services rendered."); *Reed v. Witvoet*, 724 N.E.2d 553, 557 (Ill. App. Ct. 3d Dist. 2000). On this authority, HBG contends that Harrahs cannot recover its fire watch damages[2] because it "knowingly chose to violate Illinois law and open for business without first receiving the proper permits." (Doc. 61 at 9). HBG has not, however, indicated precisely what law Harrahs violated.

In its response, Harrahs notes that it received a building permit from the City of Metropolis, Metropolis does not issue Certificates of Occupancy, Harrahs had permission to operate the new boat from the OSFM, the Illinois Gambling Authority did not shut the casino down when it found out about the situation, and OSFM has previously allowed facilities not complying with applicable codes to operate with a fire watch. While HBG disputes some of the finer points of these statements and the permissible inferences to be drawn therefrom, its arguments are feeble.

The flaw in HBG's case is its failure to identify how Harrahs's operation of the old boat/new barge was illegal. It has cited to no provision of local, state, or federal law indicating illegality in its actions. This is borne out by the fact that the relevant authorities let Harrahs continue operating on the condition that it employed a fire watch. Equally important, HBG relies on a general statement of the law, which it has combed from cases that are factually unrelated to the case at bar. For these reasons, the court finds that HBG has failed to meet its burden of demonstrating that it is entitled to summary judgment on this basis.

C.   **The Anti-Indemnity Statute**

HBG claims that Harrahs's claim for fire watch damages is an attempt by Harrahs to

---

[2] Because of the code violations, Harrahs had to pay local firefighters to keep a fire watch on the boat 24 hours a day until it attained compliance with applicable codes.

indemnify itself from its own negligence.  Citing Illinois's anti-indemnity statute, 740 ILCS 35/1, HBG contends that Harrahs may not recover its fire watch damages.  The statute provides as follows:

> With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

740 ILCS 35/1.  This statute has no application to the present situation.  Harrahs is not seeking to recover on any provision of the Agreement that indemnifies it from its own negligence.  Whether it acted negligently in moving the old boat to the new dock is another matter, one not briefed and therefore not before the Court.

### D. Harrahs prevented Performance

HBG contends that Harrahs fired it and chose Thompson to design and build the third ramp necessary to bring the dock into compliance.  Because of this, it argues the Harrahs prevented it from performing its obligations under the Agreement.  As the Court hinted above, the nature of the relationship between HBG and Harrahs after the new boat/new dock setup failed to meet code is disputed.

In Illinois, "The failure to perform is excused where prevented by the other party to the contract." *Chicago Title & Trust Co. v. Hedges Mfg. Co.*, 414 N.E.2d 232, 237  (Ill. App. Ct. 2d Dist. 1980); *accord Lukasik v. Riddell, Inc.*, 452 N.E.2d 55, 59 (Ill. App. Ct. 1st Dist. 1983). While the Court, of course, does not reject the proposition of law relied upon by HBG, it finds that factual disputes preclude summary judgment at this stage.  Harrahs has introduced evidence that HBG was intimately involved with the third-ramp phase of the project.  Taking the facts in

Harrahs's favor, as the Court must, the record demonstrates that HBG drew plans for the third ramp and continued to review and revise the plans throughout the course of construction. Furthermore, it was at an on-site meeting on March 28, 2002, wrote up minutes of the meeting and was assigned two "Action" items for follow up.  This evidence is sufficient to create a factual issue as to whether Harrahs prevented performance.

### E. Harrahs waived its Right to Full Code Compliance

HBG contends that Harrahs waived its right to full code compliance when it paid HBG in full for its work.  In response, Harrahs points the Court to HBG's contractual obligation to design a dock that complied with all applicable codes.  Furthermore, Harrahs asserts that paying HBG for its services under the Agreement does not necessarily, given the language in the Agreement contemplating "eventual" code compliance, contradict the right to claim damages at a later date once the amount of damages became clear.

A party may waive a provision in its contract by acting in a manner indicating that it will not require strict compliance with that provision.  *Whalen v. K-Mart Corp.*, 519 N.E.2d 991, 994 (Ill. App. Ct. 1st Dist. 1988).  Illinois courts have defined waiver in this context as "an express or implied voluntary and intentional relinquishment of a known and existing right." *Geier v. Hamer Enter., Inc.*, 589 N.E.2d 711, 722 (Ill. App. Ct 1st Dist. 1992).  Viewing the facts in the light most favorable to Harrahs, the Court finds that Harrahs did not intend to relinquish its right to demand full code compliance by paying HBG for its work.  As Harrahs's brief sets out in detail, it continued to work closely with HBG regarding the construction of the third ramp and continued to rely on HBG (by adopting its plans for the third ramp, among other things) to bring the new dock into compliance with the code.

### IV. Conclusion

The Court **DENIES** HBG's motion for partial summary judgment on the issue of fire watch damages (Doc. 60).  Because the Court did not need to rely on Abell's affidavit, the Court **DENIES** the motion to strike (Doc. 75) his affidavit as **MOOT**.

**IT IS SO ORDERED.**
**DATED: July 25, 2007**

                                                    s/ J. Phil Gilbert
                                                    **J. PHIL GILBERT**
                                                    **DISTRICT JUDGE**